SHAHOOD, J.
Appellant, Nancy Murphy, as natural mother and guardian of Carlee Murphy, a minor, appeals from a Final Judgment awarding discharged attorney, Brian R. Hersh, $100,000 based on his claim for an attorney’s charging and retaining hen. Based on the evidence, we hold that the trial court abused its discretion and reverse and remand.
The underlying facts in this case involved a claim by Nancy Murphy, on behalf of her minor daughter against James Centlivre, for injuries sustained by the minor child when Centlivre lost control of his vehicle and collided with the child and two other juveniles. The child sustained a severe break in her leg, requiring two surgeries and the placement of two lifetime pins in her leg. The accident took place on April 21, 2000.
On or about April 27, 2000, Murphy entered into a contingency fee agreement with attorney Hersh to represent the child’s interests following the accident.
On December 20, 2000, Hersh served a notice of intent to claim damages pursuant *601 to section 768.76(6), Florida Statutes, upon health providers, Health Options, Inc. and CIGNA Health Care. Hersh asserted that the health care providers, as collateral source providers, would waive any right to subrogation or reimbursement unless they each provided him with a statement asserting payment of benefits and right of subro-gation or reimbursement within thirty days of receipt of this notification.
On or about February 5, 2001, Hersh received an offer from Centlivre’s liability insurer in the amount of $800,000 to settle the matter, including the mother’s consortium claim. The offer was for $200,000 up front and $100,000 as a structured settlement annuity. In a letter dated February 19, 2001, the insurance adjuster reiterated the offer and noted that she awaited Hersh’s counter-demand. The offer was never conveyed to Murphy. On February 20, 2001, Hersh, by e-mail, was discharged as Murphy’s attorney.
On February 21, 2001, Murphy, through her new attorney, filed a lawsuit against Centlivre for negligence and punitive damages. On that same day, Hersh served a notice of intent to impose a retaining and charging lien upon Murphy and the insurer as “the result of the work, labor and efforts, as well as results achieved ($300,-000.00 offer) in the above-referenced matter.”
On May 31, 2001, Hersh filed a Motion for Granting, Imposing, Determining, and Enforcing his Charging Lien and Incorporated Memorandum of Law. In his motion, Hersh claimed that he expended 14.20 hours on behalf of Murphy and her daughter and incurred $2,528.12 in costs. Hersh claimed that he was entitled to attorney’s fees in the matter pursuant to contract or quantum meruit.
At the hearing on Hersh’s motion to impose a retaining and charging lien and Murphy’s motion to strike the hen, Hersh’s expert testified that in addition to the $300,000 offer Hersh was able to obtain from the insurer, Hersh was able to waive subrogation claims in the amount of $75,000 from the health care providers.
In finding in favor of Hersh, the trial court concluded that Hersh was able to waive the subrogation liens of the health providers with a benefit totaling $75,000. Further, the court held that Hersh obtained a $300,000 offer of settlement from the insurer with a note for a counter-offer. Before a counter-offer could be made, Murphy discharged Hersh. Because the contract between Murphy and Hersh called for a one-third contingency, Hersh was entitled to $100,000 as a quantum meruit award for his services.
Following Murphy’s appeal of this matter to this court, Murphy moved this court to relinquish jurisdiction in order to allow the' trial court to hear her motion to vacate the final judgment based upon new evidence; said motion was granted April 15, 2001. On September 21, 2001, Murphy moved for rehearing based upon new evidence or mistake to vacate final judgment. Murphy claimed that the déposition taken of the Health Options representative after the hearing revealed that it had a lien of only $10,357.30 and that it never claimed a lien of over $75,000. The representative stated that there were no negotiations between Health Options and Hersh regarding the reduction of any lien. Moreover, Murphy argued that Health Options filed a memorandum in court stating that its policy was an ERISA plan, and that the notice sent to it pursuant to Florida statute had no effect upon its right to recover its lien. Thus, Hersh’s claim that he waived such claims was incorrect and untruthful.
Murphy also took the deposition of the CIGNA representative, who stated that *602 the lien amount it was claiming was $4,861.77.
Despite this new evidence, the trial court denied Murphy’s motion for rehear-' ing on the amount of attorney’s fees. This was error.
In Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz, 652 So.2d 366 (Fla.1995), the Supreme Court of Florida set out the proper criteria for determining the quantum meruit recovery of an attorney discharged without cause prior to resolution of the client’s case. See also Rosenberg v. Levin, 409 So.2d 1016 (Fla.1982)(an attorney is entitled to the reasonable value of the services rendered on the basis of quantum meruit, but recovery is limited to the maximum fee set in the employment contract). Under the Searcy standard, the court must consider several factors in determining a quantum meruit award, taking into account the value of the services to the client. See Searcy, 652 So.2d at 369. The court recognized that the time reasonably devoted to the representation and a reasonable hourly rate, are factors to consider when determining a proper award. See id. Additionally, the court recognized that several other factors provide guidance in determining a reasonable fee, including the time and labor required, the novelty, complexity and difficulty of the issues involved, the likelihood that acceptance of the case will preclude other employment, the customary rate charged in the locality, the significance of or amount involved in the representation and result obtained, special demands or time limitations, the nature and length of the professional relationship with the client, the reputation and experience of the attorney, and whether the fee is fixed or contingent. See id. at 369 n. 4; see also Frank J. Pepper, Inc. v. Vining, 783 So.2d 1160, 1163 (Fla. 3d DCA 2001); R. Regulating Fla. Bar 4^1.5. The determination as to which factors are relevant in a given case, the weight to be given each factor and the ultimate determination as to the amount awarded are matters within the sound discretion of the court. See Searcy, 652 So.2d at 369.
In this case, it is apparent that the trial court gave great weight to the “results obtained” by Hersh, namely, Hersh’s claim that he obtained a waiver of $75,000 in subrogation liens from the healthcare providers and the $300,000 offer of settlement obtained from the insurance company. Other than this one factor, it does not appear from the order itself that the court considered any other Searcy factors in arriving at a determination as to the amount to be awarded Hersh.
As to the “results obtained” factor, the court’s findings are unsupported by the evidence. There is no evidence whatsoever to support Hersh’s claim that he saved Murphy $75,000 in subrogation liens from either Health Options or CIGNA. The record evidence shows that in February 2001, Hersh was notified by Health Options that it was seeking, by virtue of its subrogation clause under its ERISA plan, benefits in the amount of $10,357.30. Its representative testified that its lien amount was never more than the $10,357.30 and that there were never any negotiations with Hersh regarding the reduction of its lien.
Hersh also claims that in addition to the Health Options lien, he “wiped out” a CIG-NA health insurance hen of “approximately $75,000.” This claim is also unsupported by any record evidence. The CIGNA representative, deposed after the hearing, testified that CIGNA was claiming a lien of only $4,861.77. Thus, assuming that Hersh is entitled to any credit for “wiping out” these liens, the maximum amount for which he would be entitled to credit is $15,219.07, not the $75,000 claimed by Hersh and found by the trial court.
*603 The record in this case shows that during the 10 months in which he had the case, Hersh expended only 14.20 hours. At most, Hersh sent some correspondence, gathered some, but not all medical records, and failed to communicate a settlement offer to his client. In the complete absence of record evidence to support the trial court’s findings, we reverse. We remand with directions to set as compensation for Hersh the 14.20 hours expended at a reasonable rate for like attorneys in the community.
REVERSED AND REMANDED.
GROSS, J., concurs.
KLEIN, J., concurs specially with opinion.