PER CURIAM.
This disciplinary proceeding by The Florida Bar against Kenneth M. Abagis is before us on complaint of The Florida Bar, Report of the Referee, and Petition for Review by Respondent, Abagis.
After hearing on the complaint of The Florida Bar and consideration of the pleadings, exhibit's, and evidence, the Referee found as follows:
“1. The respondent, Kenneth M. Aba-gis, is and at all pertinent times was a member of The Florida Bar, subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
“2. The Complaint was filed by The Florida Bar upon the direction of its Board of Governors, and all conditions prerequisite to the filing of said Complaint, required by the Integration Rule, have been fulfilled.
*396 “3. The respondent was retained by Mr. and Mrs. James A. George on or about February 12, 1972 to represent them in an attempt to recover damages for termite destruction of their home from Better Homes Realty, who had recently sold them their home, or from other parties liable; and the respondent at that time was associated with the Pensacola law firm of Levin, Warfield, Graff, Mabie & Rosenbloum.
“4. The respondent contacted Better Homes Realty and the former owners (Hines) by letters and' received replies declining reimbursement or damages for termite destruction of said home; the clients deposited the sum of $150.00 on account of a $300.00 attorney’s fee on June 6, 1972; and that in December of 1972 when James A. George was transferred to South Carolina by the United States Navy, no suit had been filed and no effective action taken on behalf of the clients, although the clients asked the respondent in September of 1972 to conclude the case before the transfer of James A. George in December of 1972.
“5. The respondent, on the 19th day of December, 1972, the day that the clients were vacating and moving from the home to South Carolina, executed an agreement with the clients wherein he agreed to make the mortgage payments of $126.16 per month until the property was sold, commencing with the payment due 1 January, 1973; to rent the property and endeavor to sell it at no less than $18,500.00 clear to the clients, all rents to be applied against the mortgage payment; to cause the home to be termite proofed and repaired, with the costs to be paid by the respondent who had the right to sue any person, including Better Home Realty, Inc. and the former owners ; and to assume responsibility for damage not covered by homeowner’s insurance with right to sue and collect damages, and a contingent fee over and above the sale price of $18,500.00 and costs incurred.
“6. The respondent made one (1) or at most, two (2) mortgage payments (see Closing Statement) and then ceased making mortgage payments, and as a result a foreclosure action was initiated against the clients.
“7. Although in a letter dated January 15, 1973 (Exhibit “C” of Respondent’s Exhibit #1), the respondent indicated that there would be a hearing in the Circuit Court on 12 February, and that Better Homes had made a Motion to Dismiss based upon the Termite Inspection Certificate, but he would keep the clients informed of the trial results, no case had been filed as of January 15, 1973, nor was a case filed; and although respondent indicated that a realtor was showing the home and the respondent expected to get a buyer soon, the exclusive right to sell listing was not entered into until February 14, 1973, as shown by Exhibit “F” of Respondent’s Exhibit #1.
“8. The respondent opened his own office as single practitioner in about November of 1972.
“9. The respondent introduced into evidence at the Grievance Committee hearing a copy of a letter bearing the date of January 18, 1973, the original copy of which is filed herewith, purporting to notify the clients that the evidence to show that the termite damage existed at the time the clients purchased the property did not exist; that the respondent would not file suit, and that the clients could get another attorney; that the respondent would continue to try to sell the home, but would make no more mortgage payments after February; and that if the respondent did not hear from the clients, he would continue to try to sell the house. Although the respondent testified that the letter was written in longhand, typed by Jeannie Lucas and mailed to his clients, Jeannie Lucas, by her deposition, denied typing the letter of January 18, 1973, and the client, James A. George, did not receive the original of *397 said letter. The letter dated January 18, 1973 was not typed by Jeannie Lucas and was prepared and presented to mislead the Grievance Committee (original file copy in record).”
The Referee recommends that Respondent be found guilty of:
(1) Having violated Disciplinary Rule 5-103(A) and (B) — Avoiding Acquisition of Interest in Litigation — in that by drafting and executing the agreement dated December 19, 1972, between the Georges and Respondent, Respondent acquired a proprietary interest in the cause of action.
(2) Having violated Disciplinary Rule 6-101 (A)(1) — Failing to Act Competently —by failing to effectively represent the interest of his clients.
(3) Having violated Disciplinary Rule 7-101 (A) (3) — Representing a Client Zealously — by failing to make the mortgage payments he had agreed to make, Respondent prejudiced the credit standing of his clients, and caused them monetary damage.
(4) Having violated Integration Rule 11.02(3) (a) — Breaches of Discipline — Moral Conduct — Standards; and having violated Disciplinary Rule 1-102(A)(4) — Misconduct — in that by misleading his clients and by introducing false evidence at the Grievance Committee hearing, Respondent engaged in dishonesty, fraud, deceit, misrepresentation and immoral conduct. The Referee recommended the following disciplinary measures relative to the above recommendations of guilty, respectively, (1) public reprimand, (2) public reprimand, (3) suspension for one month, and (4) four months suspension with proof of rehabilitation, all suspensions to run concurrently.
Having heard oral argument, carefully reviewed the record and briefs, we approve the findings and recommendations of the Referee with the following modification to recommendation (4) relative to the four-month suspension: Respondent is suspended for four months and thereafter until he shall have convinced the Chief Judge of the First Judicial Circuit that he has read in depth with understanding the Code of Professional Responsibility and the Chief Judge has certified the same to us.
Execution is directed to issue for the costs of the proceedings against Respondent in the amount of $253.00.
It is so ordered.
ADKINS, C. J., and ROBERTS, BOYD, OVERTON and ENGLAND, JJ., concur.